IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MICHAEL BARTLETT, | ) | |
| | ) | |
| Plaintiff, | ) | No. |
| | ) | |
| VS. | ) | Judge |
| | ) | Magistrate Judge |
| CITY OF MURFREESBORO, TENNESSEE, | ) | JURY DEMAND |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

For his Complaint against defendant City of Murfreesboro ("the City"), plaintiff states:

## IDENTIFICATION OF THE PARTIES

1. Plaintiff is a resident of Murfreesboro, Rutherford County, Tennessee, and a current employee of the City of Murfreesboro.

2. Defendant is a government entity located in Rutherford County, Tennessee. Defendant may be served by and through its mayor, Shane McFarland.

## JURISDICTION AND VENUE

3. This is an action for damages and equitable relief for unlawful employment practices brought under the Americans With Disabilities Act ("ADA"). The Court has jurisdiction under 28 U.S.C. §§ 1331. Venue is proper under 28 U.S.C. § 1391.

4. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and, plaintiff received a Notice of Right to Sue ("Notice") from the EEOC dated February 15, 2022.

5. Venue is proper in this Court under 28 U.S.C. § 1391 because the acts giving rise to this Complaint occurred in an area embraced within the Nashville Division of the Middle District of Tennessee.

**FACTUAL AVERMENTS**

6. Plaintiff became employed by the City in 1999 in its Fire Department.

7. Plaintiff first worked as a Firefighter until 2007, and beginning in 2007, plaintiff worked as an Assistant fire Marshal, where he conducted fire inspections, fire investigations, and instructed students and community groups on fire prevention. In or around July or August of 2019 the position of Assistant Chief/Training Division was posted within the Fire Department. Plaintiff and one other employee, Battalion Chief Brian Lowe, applied for the position. The City employs MTAS, an outside contractor, to perform interviews, rank applicants and make recommendations for hire. Interviews were scheduled for the position. However, the City did not use the MTAS process in this instance and had apparently made a determination to give the position to Brian Lowe as several other employees of the City stated to Plaintiff that Brian Lowe had been told he had the position before Plaintiff's interview was even conducted.

8. On August 1, 2019, plaintiff injured his right rotator cuff and biceps while performing required active shooter training on the job.

9. Plaintiff underwent surgical repair of the shoulder on August 30, 2019 and was released to return to work on September 5, 2019. Plaintiff took additional paid time off due to pain and the medications he was taking and physically returned to work on or about September 16, 2019, where he resumed performance of his functions as

assistant fire marshal with the exception of being "On-Call" due to temporary light-duty restriction policies.

10. On or about January 26, 2020 Plaintiff was placed back on the "On-Call" schedule notwithstanding the fact that he continued to be on temporary light-duty status, which was a deviation from City policy. Fire Marshal Carl Peas advised Plaintiff "…just don't do overhead work while on call…" and "…if anything happens, we'll all be there to help dig…" as an accommodation to Mr. Bartlett's restrictions and disability.

11. On March 9, 2020 Plaintiff was placed at maximum medical improvement. On March 10, 2020 a 10% right upper extremity impairment rating was assessed. For a period of time between March, 2020 and June, 2020, due to the Covid-19 Pandemic, the City allowed some "high risk" personnel to work from home under Policy 5003 (Temp-1) Classification and Compensation COVID-19 Emergency. Plaintiff was one of the individuals who performed "Teleworking" from home during that time, contributing to the Community Risk Assessment produced by the Fire Department in its pursuit of international accreditation through the Commission of Fire Accreditation International. Alternative work schedules and an Emergency Pay Policy went into effect on March 25, 2020. Plaintiff settled his workers' compensation claim on June 19, 2020, he was returned to full-duty on June 24, 2020 and on the same day, due to continuing pain, an MRI was ordered, the results of which Mr. Bartlett's treating physician advised him indicated that the surgery had failed.

12. On July 10, 2020 Plaintiff was referred to a shoulder specialist for reverse total shoulder replacement, and on July 13, 2020 he notified Fire Marshal Carl Peas

of this development. Two days later, on July 15, 2020 Plaintiff received an email from Brian Lowe, Assistant Chief/Training Division, advising that Plaintiff's…

> "TLD assignment… exceeded the sixty (60) day window…" and that "…an employee who has been away from the essential functions of their job for medical reasons for more than sixty (60) calendar days must take and pass the physical ability test (PAT) ***generally applicable to the employee's regular assignment or job duties…***" (Emphasis added).

13. Plaintiff first inquired with Fire Marshal Carl Peas as to why he would be required to take the PAT. Fire Marshal Peas responded that "I can't believe you're going to push this and end up hurting yourself when you could retire."

14. Upon Plaintiff's inquiry with Brian Lowe as to why in July of 2020 the PAT was being required since he had been performing his job since returning to work in September of 2019 and had been returned to the "On Call" schedule (which is not allowed for employees under light-duty restrictions) in January of 2020 and had been returned to unrestricted full-duty by his doctor since June 24, 2020, he was informed that he had to perform a return to duty test because it "had fallen through the cracks" and that he had to perform the Firefighter duties along with the Assistant Fire Marshal duties or he could retire.

15. On August 5, 2020 Plaintiff consulted with his shoulder surgeon and reverse total shoulder replacement was scheduled for September 10, 2020.

16. On August 19, 2020 Plaintiff received correspondence from Pam Russell, Human Resources Director for the City, advising that, due to the anticipated restrictions which would result from the shoulder replacement surgery scheduled for September 10, 2020, it had been determined that "…there is no accommodation that can

be made to keep you in the position of Assistant Fire Marshal" reiterating that "…you are eligible to retire at this time." Ms. Russell also stated:

> "If you do not wish to request an accommodation under the ADA and you do not wish to retire, we will need to recommend termination of employment to the City Manager."

Ms. Russell's letter indicated a deadline of September 1, 2020 to respond with a decision.

17. On August 24, 2020 Plaintiff's counsel requested a statement from Plaintiff's treating physician as to whether he had advised the City that Mr. Bartlett would retain permanent lifting restrictions as a result of his surgery. Concurrently, the City requested a statement as to whether Mr. Bartlett could perform the PAT and on August 28, 2020 a follow-up letter was sent to Dr. Joyner. Dr. Joyner's "response indicated that there are not "…current work restrictions, prior to the 9.10.2020 surgery beyond not being able to take the physical ability test…" which was furnished to Adam Tucker, City Attorney on September 4, 2020.

18. On or about August 27, 2020 Plaintiff submitted a Request for Accommodation under the Americans With Disabilities Act to Ms. Russell.

19. On September 8, 2020 Plaintiff received a letter from Pam Russell acknowledging the Request for Accommodation dated August 27, 2020 and offering temporary accommodation and advising Plaintiff will be required to perform the PAT prior to returning to work. Mr. Russell further indicated…

> "On or before October 30, 2020 the City will require a physician's note indicating your ability to return to your job with or without an accommodation."

20. On September 25, 2020 Plaintiff received FMLA Approval Notice "from 9/10/2020 through unknown date not to exceed available FMLA hours" and provided that Plaintiff must "substitute or use paid leave during [his] FMLA leave" and

provided that "[Plaintiff] will be required to present a fitness-for-duty certificate to be restored to employment."

21. On October 21, 2020, upon a follow-up office visit with his treating physician, Plaintiff was advised he could return to work in two weeks with lifting restrictions to his right shoulder only.

22. On October 23, 2020 the treating physician's October 21, 2020 office note indicating a return to work date of November 4, 2020 was furnished to Adam Tucker, City Attorney with a further request for accommodation…

> "…that his job be held open as long as he is out under the authorized treating doctor's care. At such time as he is released, if he has a weight lifting restriction which precludes him from taking the firefighter test, then we would ask that the firefighter's test not be required. As you know, Mr. Bartlett has performed the functions of Assistant Fire Marshal for approximately 13 years. In the meantime, as a temporary accommodation, we request that Mr. Bartlett be permitted to work for the City within the restrictions above stated."

23. Due to the impending expiration of approved time off previously set for October 30, 2020, on October 26, 2020 Plaintiff's counsel sent a follow-up letter to Adam Tucker, Defendant's attorney, clarifying Mr. Bartlett's intention to…

> "return to work on 11/4/20 with very basic limitations regarding lifting overhead and with special care of lifting away from the body with the right extremity only."

Further counsel indicated…

> "I understand that he will be required to undertake a physical abilities test pursuant to City policy. The City requires that the test is to be '<u>generally applicable</u> to the employee's regular assignment or job duties.' Since 2007, Mr. Bartlett has been an Assistant Fire Marshal and has been exempted from undertaking the Annual Ability Test as it no longer pertains to his work assignment. We understand that the City has taken the position that Mr. Bartlett has to pass the physical abilities test applicable to a firefighter, a position that he has not held in thirteen years."

Again, "Reasonable" accommodation under the ADA was requested to provide…

- 6 -
Case 3:22-cv-00192   Document 1   Filed 03/18/22   Page 6 of 14 PageID #: 6

> "…that Mr. Bartlett's physical abilities test actually tests whether he can physically perform the essential functions of the Assistant Fire Marshal job position." "…that any physical abilities test given actually tests for the essential functions required of an Assistant Fire Marshal."

In the alternative, it was requested that…

> "the City waive the physical abilities test" as an accommodation "…because Mr. Bartlett can perform the essential functions of Assistant Fire Marshal within the restrictions prescribed by his physician."

24. Following the first surgery, while under restrictions, from January 26, 2020 through June 24, 2020 Plaintiff performed his job and had even been returned to the "On Call" schedule for that entire, approximate six (6) month period while under a "Single No Overhead Lifting" restriction which did not change until June 24, 2020. Plaintiff had been performing the job within the limitations and was capable of continuing to perform as Assistant Fire Marshal within the limitations resulting from the second surgery which were originally, on October 21, 2020 "Lifting maximum – 2 lbs." and "Lifting frequently – 1 lbs." and which increased to "Lifting maximum 10 - lbs." and Lifting frequently – 5 lbs." on December 11, 2020. The City was inconsistent in accommodating the restrictions following the first surgery and then refusing to accommodate the restrictions following the second surgery which were no more limiting with respect to the essential functions required of an Assistant Fire Marshal than the restrictions from the first surgery. The City also discriminates in making accommodations and exceptions to its policies and procedures.

25. On November 5, 2020 Plaintiff received a letter from Pam Russell updating the accommodation under the ADA providing approved time off until December 3, 2020 as…

"…there is no TLD work available based on the limited max 2 lb frequent 1 lb restrictions…" also indicating "…a physician's statement will be required advising when he can return to work without accommodation."

26. On November 25, 2020 Plaintiff received a letter from J. Randolph Wilkerson, Assistant Human Resources Director, advising that Plaintiff had "…been absent from work since September 10, 2020 due to a medical condition and that your eligibility for FMLA will end December 8, 2020." and further offering information for filing for a Long-Term Disability claim.

27. On December 3, 2020 Counsel submitted to Adam Tucker a copy of Dr. Joyner's December 2, 2020 return to work office note, confirming the restrictions only pertain to Plaintiff's right upper extremity, requesting the City accommodate his off-work status, approve time off until December 11, 2020 and accommodate Plaintiff's restrictions upon his return to work with additional temporary light-duty. Further it was requested that Plaintiff's job be held open, and if he has restrictions that the PAT not be required and requesting he be permitted to work within his restrictions.

28. On December 7, 2020 Plaintiff received a letter from Pam Russell acknowledging receipt of Dr. Joyner's December 2, 2020 office note and advising there was no temporary light-duty assignment available to accommodate the current limitations. Ms. Russell also addressed Long Term Disability and advised the 90-day elimination period ended December 8, 2020 and that the City would continue to use paid leave unless LTD is approved, an application for which was submitted on December 9, 2020.

29. On December 16, 2020 Plaintiff received a letter from Pam Russell advising that the City had information purportedly from Dr. Joyner by way of Public Entity Partners that Mr. Bartlett would have a permanent 20 pound lifting restriction and advising

that "...the City will not be able to hold your job in any capacity any longer…" Ms. Russell also reiterated Mr. Bartlett's eligibility for retirement and offered 60 days of approved personal leave to seek other employment within the City with a deadline of December 23, 2020 for his decision to retire or request additional leave.

30. On December 17, 2020, Paul Bracey, Nurse Case Manager sent a letter to Dr. Joyner requesting a statement of whether Mr. Bartlett will "...have no restrictions..." or "...will retain a permanent 20 lb restriction…".

31. On December 23, 2020 Counsel sent a letter to Attorney Tucker requesting an extension to respond to the deadline to choose between retirement or termination based upon Dr. Greenberg's statement regarding restrictions which was furnished to Paul Bracey, NCM in response to his request to Dr. Joyner, based upon the fact that Dr. Greenberg was not his treating physician, which deadline was extended by the City to December 31, 2020. Dr. Joyner's response to Paul Bracey's request received on December 30, 2020 was that "…Mr. Bartlett will possibly retain a permanent 20 pound restriction…"

32. On December 31, 2020 Counsel sent a letter to Attorney Tucker enclosing Dr. Joyner's response to Paul Bracey's request and discussing the fact that exceptions to policies and procedures are often made by the City and requested an extension to the deadline until Mr. Bartlett had completed treatment, alternatively allowing him to work with his restrictions and a waiver of the PAT requirement.

33. On January 4, 2021 Counsel received a letter from Pam Russell in response to the December 31, 2020 request for accommodation in which she stated…

> "...the City approved your request for temporary light duty (TLD) September 9, 2019 and continued to approve your request for an accommodation until September 9, 2020…"

However, Plaintiff had been returned to full-duty by the City on January 26, 2020 and by his authorized treating physician on June 24, 2020, which in either case TLD would not require extension through September 9, 2020. Further, the July 15, 2020 email from Brian Lowe advising that a PAT would be required to return to work also indicated…

> "Your TLD assignment started on 9/9/2019 and ended on 3/9/20."

Ms. Russell's letter indicated a deadline of January 8, 2021 to decide between retirement or transferring to other employment within the City.

34. On January 7, 2021 Counsel sent a letter to Attorney Tucker regarding the letter received from Pam Russell advising that the City was unable to accommodate the 10 pound restriction, reiterating Mr. Bartlett's eligibility for retirement and offering approved leave to seek other employment within the City. Mr. Tucker was also advised that Mr. Bartlett's restrictions had been changed from 10 pounds to 15 pounds. Further, Mr. Tucker was informed that at the time of his initial injury, Mr. Bartlett was returned to work with no use of his right extremity and the City was able to accommodate that restriction. When his restriction was changed to a 10 pound lifting restriction, he resumed his normal duties. However, since the second surgery the City took the position that it was unable to accommodate a 10 pound lifting restriction on Plaintiff's right upper extremity. Again, accommodations were requested that the City approve "TLD" and accommodate the current 15 pound restriction, allowing Plaintiff to perform his duties as he was allowed to when "TLD" was approved for a 10 pound lifting restrictions after the initial injury.

35. On January 8, 2021 at 1:01 p.m., Plaintiff and Plaintiff's counsel received an email from Pam Russell advising that…

> "…the Department can no longer hold this position open as it is causing an undue operational hardship. The Fire and Rescue Department is in the process of posting this position… As an accommodation, the City will continue to offer Mr. Bartlett approved leave for 90-days (beginning today) to look for another position within the City which can now include lifting up to 15 pounds. The option to retire is also available."

On the same day at 4:08 p.m., Plaintiff received an email from Fire Chief Mark Foulkes as follows:

> "Good Afternoon,
>
> An Assistant Fire Marshal position in the Community Risk Reduction Division is posted on the Employee Self-Service Portal. The posting will close on Friday January 15, 2021 at 4:00 pm.
>
> Have a great weekend,"

36. On January 18, 2021 Plaintiff's counsel sent a letter to Attorney Tucker confirming the Fire Department had refused to accommodate restrictions, that he had been advised on January 8, 2021 that his job was in the process of being posted, that the City offered 90 days to seek other employment or retire, that there were two positions within the City being considered and inquired as to the process to make a lateral move within the City.

37. On February 11, 2021 a signed agreement was entered into providing for a transfer from the Fire Department to the Building & Codes Department effective 2/16/2021 which position resulted in a reduction in pay from $36.86 to $32.67 per hour and required Plaintiff to undergo a one-year probationary period and to pass six ICC Codes tests within two years of the start date or be terminated.

38. On April 28, 2021 Plaintiff received Dr. Joyner's final report indicating that "…His permanent restriction includes an overhead lifting restriction of 20 pounds." Dr. Joyner further stated, "Mr. Bartlett failed to recover from a right shoulder rotator cuff repair and biceps tenodesis and ultimately required a reverse total shoulder arthroplasty."

39. As a direct result of Defendant City of Murfreesboro's actions, plaintiff has suffered embarrassment and humiliation, emotional pain and suffering and mental anguish, stress and anxiety, inconvenience, and loss of enjoyment of life due to the loss of his job within the Fire Department.

40. As a result of its actions, Defendant City of Murfreesboro is liable to Plaintiff in an amount to be determined by the jury for the damages Plaintiff has incurred.

41. As a result of its actions, Defendant is liable for Plaintiff's attorney's fees.

42. As a result of its actions, Defendant is obligated to reinstate Plaintiff to his employment and to make Plaintiff whole for all lost earnings and benefits.

**Count I**
**Claim for Violation of the Americans With Disabilities Act**
**(Discrimination, Retaliation, and Failure to Accommodate)**

43. Plaintiff incorporates paragraphs 1-42 as if fully realleged herein.

44. Plaintiff was an "employee" of Defendant within the meaning of the ADA, 42 U.S.C. § 12111(4).

45. Defendant is an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5)(A).

46. Plaintiff's physical limitations, shoulder injury, and shoulder replacement are disabilities within the meaning of the ADA, 42 U.S.C. § 12102(4)(A)&(B).

47. Defendant perceived or regarded Plaintiff to have a disability within the meaning of the ADA, 42 U.S.C. § 12102(4)(C).

48. Plaintiff is a "qualified individual with a disability" within the meaning of the ADA, 42 U.S.C. § 12111(8).

49. Defendant discriminated against Plaintiff by forcing him to take a different position at lesser pay.

50. Defendant refused to allow Plaintiff the reasonable accommodations described herein.

51. Plaintiff was capable of performing the essential functions of his job with or without a reasonable accommodation.

52. Defendant retaliated against plaintiff for asserting his rights under the ADA.

53. Plaintiff has suffered direct pecuniary losses as a result of Defendant's unlawful discrimination.

54. Plaintiff will continue to suffer direct pecuniary losses as a result of Defendant's unlawful discrimination.

**WHEREFORE,** premises considered, plaintiff demands the following relief:

1. A jury trial and entry of judgment in his favor;

2. Back pay and damages for lost benefits;

3. Compensatory damages for embarrassment and humiliation, emotional pain and suffering and mental anguish, stress and anxiety, inconvenience, and loss of enjoyment of life;

4. Attorney's fees and expenses;

5. Reinstatement or, alternatively, front pay and benefits;

6. Prejudgment interest and, if applicable, post judgment interest; and

7. Such other and further legal or equitable relief to which he may be entitled.

Respectfully submitted,

/s/Kerry Knox
Kerry Knox (TN BPR No. 23302)
117 South Academy Street
Murfreesboro, Tennessee 37130
(615) 896-1000

/s/D. Russell Thomas
D. Russell Thomas (TN BPR No. 6014)
138 South Cannon Avenue
Murfreesboro, Tennessee 37130
(615) 848-1818

Attorneys for Plaintiff